## TIBBS *vs.* MORRIS.

It is not the province of courts of equity to relieve parties failing to perform their contracts from the legal consequence of such failure, unless it has resulted from mistake, fraud, or accident, or the acts and dealings of the parties show an assent to the delay by the party insisting upon the forfeiture, and it appears that under the circumstances it would be inequitable for him to insist upon it.

Where a party in possession of land under a written contract to purchase the same, having made default in his payments, is served with a summons in an ejectment suit brought by the vendor, this is notice to him that the vendor will no longer acquiesce in delay of payment; and upon receiving such notice, it is the vendee's duty to act promptly by tendering payment, and asserting his claim to a performance of the contract; or his equity will be lost.

If he suffers the vendor to recover the posession of the premises, in the ejectment suit, he can not maintain an action against him for a specific performance of the contract.

In March, 1853, T. was the owner of a piece of land, subject to a mortgage to G. then in process of foreclosure under the statute. Previous to the day of sale upon the mortgage, T. and M. agreed that M. should bid off the land, take the title thereto, pay the amount of the mortgage and costs, and execute to T. an agreement to convey the premises to him by the 1st of January, 1854, upon the payment by T. of the sum paid by M. at the mortgage sale, a small debt due from T. to M., and $100; and that in case M. should be compelled to bid more than the amount due on the mortgage, to secure the land, such surplus should be released by T. In pursuance of this agreement, M. bid off the land for a much larger sum than the amount due upon the mortgage and costs, which excess was released by

Tibbs *v.* Morris.

T., and a written contract was executed by M. in accordance with the previous agreement between the parties. *Held* that T. was entitled to *redeem* the premises, upon the payment by him of the several sums mentioned in the contracts, and interest, and the costs of an ejectment suit brought by M.; M. being charged with moneys received by him upon sales of portions of the land, and for timber sold, and with the net value of the use of the land, and interest, and allowed for improvements made.

*Held also*, that the real agreement between the parties was that M. should loan T. a sum of money sufficient to pay the mortgage and costs, and take and hold the title to the land as security therefor and for the small debt due him from T., and the $100 agreed to be paid for the time of M. in attending the sale &c. That such a contract was plainly inferrible from the facts.

Where loans are made, and securities for repayment are taken, such cases are in equity made exceptions to the general rule that when written contracts are made, the rights of the parties must be determined by the writing, unaffected by parol proof.

In that class of cases, whatever the form of the instrument may be, it may be shown by parol evidence that the nature of the transaction was a loan of money, and that the writings, whatever may be their form, were intended as security for repayment.

In all cases, where the real transaction between the parties was a loan, and the writings were executed as a security therefor, parol evidence is admissible; and when such fact satisfactorily appears, equity will give effect to the writings according to the true intent of the parties.

APPEAL from a judgment entered upon the report of a referee. The action was brought to redeem real estate. The following facts were found by the referee, viz: That in March, 1853, the plaintiff was the owner in fee of the piece of land described in the complaint, containing fifty-two forty-hundredths acres, subject to a mortgage thereon, executed by said plaintiff to Martin Grover, which said mortgage was being foreclosed by advertisement, and was to be sold by virtue of a power of sale in said mortgage, on the 16th day of March, 1853; that a few days previous to said day of sale, the plaintiff and the defendant entered into a parol agreement, by the terms of which agreement the defendant promised and agreed with the plaintiff, that he would purchase said premises at said mortgage sale, and take the title thereto; that the said defendant would, after such sale, give to the plaintiff an

agreement covenanting to convey said premises to the plain-
tiff, provided that the said plaintiff should, by the first
day of January thereafter, pay the defendant such sum as
should be due upon such mortgage at the time of such sale,
and the costs of such sale, a small debt then due from the
plaintiff to the defendant, and $100 in addition thereto, and
the interest on the same to said 1st day of January; and in
case said defendant should be compelled to bid more than the
amount due on said mortgage to secure the land, that said
surplus should be released by the plaintiff. That the
plaintiff agreed on his part, that he would release such sur-
plus, and pay said sum by the 1st day of January; that the
premises were sold by virtue of said mortgage, on the 16th
day of March, 1853, and in pursuance of said parol agree-
ment the defendant bid the same in at the sum of $1375,
and took the title thereto; that the defendant paid to said
Grover or his attorney, the amount due upon the mortgage,
and the costs of said foreclosure, and paid no other sum on his
bid; that the plaintiff receipted to said Grover or his attorney
making such sale, the amount of surplus; that on said 16th
day of March, the amount paid by the defendant to said
Grover, and the amount due from the plaintiff to the defend-
ant, previous to such sale, amounted to the sum of $777.82.
That after said sale, and on the day thereof, the defendant,
in pursuance of said parol agreement, made and delivered to
the plaintiff, the agreement in writing, set forth in the com-
plaint, and the plaintiff, in pursuance of the parol agreement,
and in consideration of the execution of said written agree-
ment, did then release the defendant from the payment of
the surplus of said bid, and for such release received no
other consideration. That the plaintiff made default in
the payment of said sum of $877.82. That the defendant,
in January, 1854, commenced an action of ejectment against
the plaintiff for the recovery of the possession of the prem-
ises, and on the 6th day of April, 1854, duly recovered judg-
ment in said action, the defendant not appearing therein;

Tibbs *v.* Morris.

during the same month the defendant was put in possession of the premises by writ under said judgment and the plaintiff was ejected therefrom. That the value of said premises, at the time of said mortgage sale, was $1500 ; that the value of the same, on the 6th day of April, 1854, was $1600. That the defendant sold from said premises valuable pine timber and received for such timber, on or before the 6th day of October, 1855, $1000. That on the 23d day of April, 1855, the defendant conveyed one acre of said land to Handy Bellany, and received therefor $105, and on the 16th day of June, 1857, conveyed six ninety-six hundredths acres of said land to Walter Howard and another, and received therefor $417.61. That in the year 1858, the defendant made permanent improvements upon said land, in stumping and fencing, at an expense and of the value of one thousand three hundred and fifty dollars ($1350.) That the defendant, since the month of April, 1854, has been in possession of said premises ; that up to and including the year 1858, the use of the premises was worth no more than ordinary repairs and taxes ; that from the 1st day of April, 1859, to the date of the report, the use of said premises had been of the value of $100 yearly, above ordinary repairs and taxes. That on the 1st day of July, 1857, the plaintiff tendered a deed to the defendant, of said premises, and requested him to convey the same to the plaintiff; that the defendant refused, claiming title. That this action was commenced on the 16th day of March, 1859. That the costs in said action of ejectment were $15.

The prayer of the complaint was as follows : "Wherefore, the plaintiff demands judgment that the title acquired by the defendant to the said land as aforesaid, may be adjudged and decreed by this court to have been acquired for the use and benefit of the plaintiff ; that in respect of the said piece of land and any and all portions thereof, which may have been sold by the defendant, and any and all consideration and sums of money, and any and all security and securities,

for any such consideration or any such sum or sums of money, the defendant may be adjudged and decreed to have been and to be a trustee for the plaintiff; that the defendant may be required by the decree of this court, to render an account of all moneys received for all and any portion or portions of said land sold by the defendant, or to be received, and all securities made or to be made for any such moneys or consideration, and to pay all said moneys, and deliver and transfer all such securities to the plaintiff, and convey all his right and interest in the said piece of land, and any part thereof, to the plaintiff, and to render an account of the timber taken from said premises by the defendant or with his permission, and of the sale of any and all timber of and from the said piece of land, and the moneys received therefor, and all securities for any such moneys, and that all such moneys may be paid to the plaintiff, and all such securities transferred and delivered to him, deducting from such moneys the said sum of six hundred dollars paid by the defendant on the said purchase of said mortgaged premises, with the interest thereon, and all reasonable expenses and compensation to be allowed to the defendant, and the said premium of one hundred dollars, as well as all taxes paid upon said land by him, and the judgment in said ejectment suit may be set aside till the further order of this court; or in case the court shall not think the plaintiff entitled substantially to the relief hereinbefore demanded, that then the defendant shall be required by the judgment and decree of this court, to pay to the plaintiff the balance of the said sum of $1375, after deducting therefrom the amount paid by the defendant on said mortgage sale, for moneys due on said mortgage, and interest to the time of the sale, and the costs and expenses of foreclosure, being in all $600, paid by the defendant as aforesaid, which said balance amounts to the sum of $775; and that the defendant shall be required to pay the plaintiff the interest on said balance from the 16th day of March, 1853; and further, that in any event, the defendant shall be required, adjudged and

decreed to pay the costs of the plaintiff in this action ; and for such further or such other judgment and decree," &c.

The referee's conclusions of law, from the facts found by him, were : That the plaintiff, under said contract, was entitled to redeem said premises, and that upon such redemption, the defendant was entitled to be allowed and paid the amount of the sum mentioned in said contract, the costs in the action of ejectment, and the interest upon the said several sums, and the improvements made upon the premises, and the interest of the sum paid for such improvements ; that the defendant should be charged with, and should allow, upon the amounts so credited, the amount received for timber sold from said premises, the sums received for the two parcels of land sold, and for the value of the net use of said premises, and the interest upon said several sums ; which, upon being ascertained and determined, the referee found left equitably due from the plaintiff to the defendant, at the date of the report, the sum of $665.53 ; that the plaintiff was entitled to judgment ; that the defendant, upon being paid within sixty days from the entry of said judgment, the said sum of $665.53, and interest from the date of the report, should convey to the plaintiff the premises described in the complaint as purchased at said mortgage sale, excepting the parcel conveyed to Bellany, and the parcel conveyed to Howard ; and that neither party recover costs of this action.

*Angel & Green,* for the appellant.

*Charles Collins,* for the respondent.

*By the Court,* GROVER, J. It is clear that the judgment in favor of the plaintiff can not be sustained upon the ground that he is entitled to a specific performance of the written contract for the sale of the land by the defendant to him. The plaintiff clearly has no equity entitling him to such performance. The ouster of the plaintiff from possession by the ejectment suit brought by the defendant, in 1854, was

notice to the plaintiff that the defendant would no longer acquiesce in delay of payment by the plaintiff; and upon receiving such notice it was the duty of the plaintiff to act promptly, by tendering payment and asserting his claim to such performance, or his equity would be lost. The commencement of the action would give such notice. It is not the province of equity to relieve parties failing to perform their contracts, from the legal consequence of such failure, unless it has resulted from mistake, fraud or accident, or the acts and dealings of the parties show an assent to the delay by the party insisting upon the forfeiture, and it appears that under the circumstances it would be inequitable for him to insist upon it. In this case there can be no pretense that there is any equity for the plaintiff to insist upon the specific performance of the contract as a purchaser of the land from the defendant. There is no case containing the evidence given upon the trial before the referee, nor any exceptions to rulings made upon the trial. The case is before the court upon exceptions taken by the defendant to the conclusions of law drawn by the referee from the facts found by him. Under these circumstances, it is the duty of the court to put the most favorable construction upon such facts, in support of the judgment. The referee finds, among other facts, that in March, 1853, the plaintiff was the owner of the land, subject to a mortgage for a small portion of its value then in process of foreclosure pursuant to the statute. That previous to the day of sale upon the mortgage the parties agreed that the defendant should bid off the land, take title thereto, pay the amount of the mortgage and costs and execute to the plaintiff an agreement to convey the premises to the plaintiff by the 1st of January then next, upon the payment by him to the defendant of the sum paid upon the purchase at the mortgage sale, a small debt due from the plaintiff to the defendant, and $100 in addition thereto; and that it was further agreed that in case the defendant should be compelled to bid more than the amount due on

said mortgage, to secure the land, such surplus should be released by the plaintiff. That in pursuance of such agreement the defendant bid off the land for a much larger sum than the amount due upon the mortgage and costs, which excess was released by the plaintiff, and the written contract was given by the defendant to the plaintiff, upon payment by the latter of the sum paid by the former upon his bid, the small debt owing to the defendant, and $100 in addition, with interest, by the 1st of January then next. These are the only facts found which characterize the relations entered into by the parties. From these it is to be determined what the real nature of the contract was. If it shows merely the relation of vendor and vendee, we have already seen that the plaintiff has no rights available either at law or in equity. Upon mature consideration, my conclusion is, that that is not the fair inference from the facts; that although it is not expressly found by the referee, in so many words, that the real agreement between the parties was that the defendant should loan the plaintiff a sum of money sufficient to pay the mortgage and costs, and take and hold the title to the land as security therefor and for the small debt due him from the plaintiff, and the $100 agreed to be paid for the time of the defendant in attending the sale, &c. yet that such a contract is plainly inferrible from the facts, and that the referee did so intend to find the fact. That it was a loan from the defendant to the plaintiff appears from the $100 included for time and trouble, and much more forcibly from the arrangement to release any surplus bid at the sale, which was in fact one by the plaintiff. The latter fact, in my mind, is wholly inconsistent with the idea that the defendant should have the land for the sum expressed in the written contract, unless the plaintiff, who appears to have been embarrassed, should promptly pay the money by the time specified in the contract. This must have been the real finding of the referee, although not expressly stated, upon which he based his conclusions of

law, excepted to by the defendant. The defendant's counsel insists that the parol agreement before the sale, between the parties, was void by the statute of frauds. I do not conceive it necessary to discuss this point. That agreement was so far executed by the plaintiff's releasing the surplus bid at the sale as to take it out of the statute, in equity, if originally within it. The counsel further insists that the whole prior negotiation was merged in the written contract, and that that alone can be resorted to to determine the rights of the parties. The counsel is correct, as a general rule. But where loans are made and securities for repayment are taken, the rule is different. Such cases are, in equity, made exceptions to the general rule that when written contracts are made, the rights of parties must be determined by the writing, unaffected by parol proof. In this class of cases, whatever the form of the instrument may be, it may be shown by parol evidence that the nature of the transaction was a loan of money and that the writings, in whatever form, were intended as security for repayment. Thus it may be shown, in equity, that a deed absolute, with covenants of warranty, was given as a security upon a loan of money. (4 *Kent*, 143. *Brown* v. *Dewey*, 2 *Barb.* 29. 2 *Story's Equity*, § 1018.) These authorities show that in all cases when the real transaction between the parties was a loan and the writings were executed as a security therefor, parol evidence is admissible; and when such fact satisfactorily appears, equity will give effect to the writings according to the true intent of the parties. Applying the rule to the present case, the writing, although on its face a contract for the sale of the land by the defendant to the plaintiff, might be shown by parol to have been one of the acts done by the parties in this case to secure the repayment of the money loaned by the defendant to the plaintiff. The legal title was obtained by the defendant upon the purchase at the mortgage sale. The plaintiff had only an equity of redemption remaining. And this equity could only be barred by lapse of time — ten years — by statute, or by being foreclosed

Tibbs *v.* Morris.

by action, or released by the plaintiff. Prior to the revised statutes mortgagees, after forfeiture, frequently brought ejectment against mortgagors, and recovered possession, but the equity of redemption was entirely unaffected by this preceeding. If I am right, then, in the conclusion that the plaintiff's interest was an equity of redemption, this right was not affected by the recovery in ejectment, unless such effect is given to it by the statute. The revised statutes, (*sec.* 38, *vol.* 2, *p.* 318,) provide that every judgment in ejectment, rendered by default, shall, from and after three years from the time of docketing the same, be conclusive upon the defendant, &c. but that a new trial may be granted, upon the terms prescribed by the court within five years thereafter. This provision, as also sections 36 and 37, was designed to change the rule of the common law that ejectment was a mere possessory action and determined nothing as to the title, under which ejectments without limit might be brought and the title litigated between the same parties as often as they or either of them chose. The statute relates only to legal titles, such as were the subjects of litigation in the action of ejectment. It was not intended to affect the mere equitable rights of the parties, and such are not barred by the statute. It is true that by the provisions of the code the defendant might have interposed an equitable defense in the action and claimed affirmative relief; but this, I think, he was not bound to do. My conclusion upon the facts found by the referee is that his legal conclusions were correct, and that the judgment should be affirmed, with costs.

[ERIE GENERAL TERM, May 2, 1865. *Marvin*, *Grover* and *Daniels*, Justices.]