JONES *v.* PROPRIETORS OF THE PORTSMOUTH AQUEDUCT.

The question whether, as against an adjoining owner, the use made by a party of his land or water is a reasonable one, being a mixed question of law and fact, will not be considered at the law term.

The mere silence of a party will not work an estoppel when the other party is fully acquainted with the facts.

CASE, for diverting water from an ancient and natural brook. Facts found by the court. In 1870 the defendants, a corporation, bought twenty acres of land in the north-westerly part of Portsmouth, about three miles from the city, and in 1874 and 1875 excavated, and have since maintained thereon, reservoirs, wherein, from underground springs, water accumulates, which by an aqueduct they convey to the city, and there for their own profit sell to the citizens for domestic and other uses. The reservoirs comprise several square rods in the area, and are from four to six feet deep. There were no visible springs or running water upon the land prior to the excavations.

The brook, or one of its principal tributaries, has its source in a marshy track of land, which is situated for the most part westerly of the defendants' land, but an arm of which extends into it a distance of about sixteen rods and to a point about two rods from the more westerly reservoir. This marsh is a few feet lower than the land at and immediately about the reservoirs, so that water in the higher ground would naturally, and prior to the excavations did to some extent, and to a less extent still does, ooze into it by percolation through the soil, and so feeds the brook. Before, and at the time of the excavations, the brook first appeared as running water in a defined channel, at a point eight or ten feet westerly of the defendants' westerly line. It flows westerly down a gradual and nearly uniform slope, about three fourths of a mile, to an arm of the sea, and, at or near its mouth, for a short distance over the plaintiff's land. Its mouth at ordinary high tide is about thirty feet lower than its source.

Prior to the laying of the aqueduct there was always some water flowing in the brook upon the plaintiff's land, though in dry seasons the stream was very small, sometimes not larger than would flow through a two-inch pipe. The effect of the defendants' works has been to diminish the quantity of water percolating into the marsh as above stated to such an extent that upon several occasions, in the dryest part of the seasons, the brook upon the plaintiff's land has been for a considerable time, and during the last summer and fall for nearly three months, entirely dry, and in consequence thereof the plaintiff has been compelled to pump water for the use of his cattle pastured in the field through which it runs; but there has been, from that cause, no sensible diminution of the water in the brook, except in seasons of drought. The injury thus caused to the plaintiff, in comparison with the cost or value of the defendants' works, is very small.

The defendants make and have made no use of their land, except to take the water therefrom in the manner and for the purposes stated. Their works have been constructed in a reasonable

and proper manner, and in the only practicable mode by which the water could be collected and made useful for their aqueduct purposes.

It appeared that considerable wood or timber had been cut upon the line of the brook and in the vicinity within the past few years. Subject to the plaintiff's exception, the court received evidence tending to show that the quantity of water in another brook in the vicinity, not affected by the defendants' works, had diminished during those years.

The plaintiff and the defendants at the time of making the reservoirs had equal knowledge of the character of the land, the sources of the brook, and of the location of the reservoirs, and had reasonable ground to believe that the effect of the works might be to diminish somewhat the quantity of water which would otherwise accumulate in the marsh and supply the brook. The plaintiff was fully informed of the use which the defendants proposed to make of the land, of the excavation of the reservoirs and the laying of the aqueduct, and made no objection until long after the works were completed. The defendants claimed that the plaintiff was therefore estopped from setting up his present claim.

Judgment is to be rendered for the plaintiff for $100 damages, or for the defendants, as the court may order.

*S. M. Wheeler*, for the plaintiff.

*J. W. Emery*, *J. S. H. Frink*, and *C. Page*, for the defendants, cited and commented upon *Bassett* v. *Salisbury M'f'g Co.*, 43 N. H. 569; *Hayes* v. *Waldron*, 44 N. H. 580; *Swett* v. *Cutts*, 50 N. H. 439; *Wilson* v. *New Bedford*, 108 Mass. 265; *Greenleaf* v. *Francis*, 18 Pick. 117; *Walker* v. *Cronin*, 107 Mass. 564; *Village of Delhi* v. *Youmans*, 45 N. Y. 362; *Hanson* v. *McCue*, 42 Cal. 310; *Acton* v. *Blundell*, 12 M. & W. 335; *Chasemore* v. *Richards*, 2 H. & N. 168.

BLODGETT, J. The question whether the use made by the defendants of their land and of the water is or is not a reasonable use as against the plaintiff, is a mixed question of law and of fact, and must be determined at the trial term.

The only question of law raised by the case is that of estoppel. This question presents no difficulty in view of the finding that " the plaintiff and defendants, at the time of making the reservoirs, had equal knowledge of the character of the land, the sources of the brook, and of the location of the reservoirs, and had reasonable ground to believe that the effect of the works might be to diminish somewhat the quantity of water which would otherwise accumulate in the marsh and supply the brook," for it is quite apparent that, upon these facts, every element of estoppel is wanting. At most the plaintiff was silent merely, and it is familiar law that

the silence of a party does not create an estoppel where the other party is fully acquainted with the facts. *Odlin* v. *Gove,* 41 N. H. 465; Big. Est. (2d ed.) 467; 1 Sto. Eq. Jur. (12 ed.) *s.* 386; 6 Wait Act. & Def. 707, and cases cited.

Judgment will therefore be entered for the plaintiff, or for the defendants, as the trial judge may find upon the question of reasonable use.

*Case discharged.*

CARPENTER, J., did not sit: the others concurred.