Hillsborough, }
Feb. 2, 1909. }

## LALLY, *Adm'x,* *v.* PRUDENTIAL INSURANCE COMPANY OF AMERICA.

Where a life insurance company has waived a provision of the policy for pay-
ment of premiums at stipulated times by its repeated acceptance of them
when overdue, it cannot without previous notice insist upon a subsequent
enforcement of the strict letter of the contract as to payment, upon the
ground of changed conditions due to the critical illness of the insured.

A party producing verbal testimony cannot insist upon its conclusiveness as
matter of law, when it appears that the witness was not wholly disinter-
ested, that he testified to a conversation with a person since deceased, and
that circumstances in evidence tended to contradict him.

A motion to set aside a verdict as against the law and the evidence is deter-
minable by the trial court.

ASSUMPSIT, upon a policy of life insurance. Trial by jury and
verdict for the plaintiff. Transferred from the January term,
1908, of the superior court by *Chamberlin,* J.

The policy contained a provision that failure to pay the weekly
premiums when due should work a forfeiture. The insured died
March 2, 1907. The last payment entered on her book was made
October 29, 1906, and paid the premiums to December 24, 1906.
On seven occasions during the previous year the defendant had
received without objection payments that were from four to ten
weeks overdue. February 26, 1907, the plaintiff, at the request
of the insured, called at the defendant's office and paid $3.50.
The person who received the money said he would give her a
receipt and come down the next day and enter the amount on the
book of the insured. The receipt contained the following clause:
" This temporary receipt is given upon the condition that under
no circumstances will the company be liable under said policy in
case of death or otherwise, unless said policy was in force accord-
ing to its terms when the above payment was made." The insured
was in fact very ill at the time. The plaintiff did not read the
receipt, and the agent did not come to the house until after the
decease of the insured, when the sum paid by the plaintiff was
tendered back and refused.

At the close of the plaintiff's evidence, the defendant's motion
for a nonsuit was denied, subject to exception. The defendant
then called its collector, who testified that when the insured was
about six or seven weeks in arrears he told her the policy would
be lapsed if she did not pay up her arrears, and that she then
refused to pay. Shortly thereafter the policy was lapsed on the

defendant's books, but no notice of this action was given to the insured or to the plaintiff. At the close of all the evidence the defendant's motion that a verdict be directed in its favor was denied, subject to exception.

*James A. Broderick*, for the plaintiff.

*Branch & Branch*, for the defendant.

PEASLEE, J. The evidence produced by the plaintiff was sufficient to authorize a finding that the defendant had led the insured to believe that payment of her weekly premiums at the time stipulated for in the policy would not be insisted on. It had in effect said to her: " You need not pay on the day named. The payments will be received if made when ten weeks overdue." Having made this representation, it could not complain of her acting upon it, unless it had retracted the statement and given her reasonable opportunity to act before the retraction was to be effective. *Appleton* v. *Insurance Co.*, 59 N. H. 541, 546.

It is conceded that such is the law of this state; but it is urged that, as the insured was in good health when the overdue payments were received and critically ill when the tender in question was made, the circumstances were so changed that the former waiver did not apply. This argument is based upon an erroneous view of the nature of the transaction. If the question was one of reinstating a lapsed policy, there would be force in the argument. But that is not the case presented here. As the case was tried and the verdict found, the policy was always in force. The question was solely one of the time for paying an existing obligation. There was no evidence that the waiver which the jury found was based upon any condition as to the health of the insured when the payments were made. To hold that under such circumstances the insurer might, without previous notice, insist upon the letter of its contract when illness should overtake the insured, would open the door to the fraud the Appleton case guards against.

The principle applies with especial force in cases like the present one. The insured was paying a premium of thirty-five cents a week on a life policy of $189. She was apparently a working girl, belonging to that class among whom this kind of insurance is usually effected. The parties insured are not persons skilled in business, and the annual premium is nearly ten per cent of the sum insured. There seems to be no just reason for limiting the rule that in such a case the insurer is to be held to the utmost good faith and fair dealing.

The plaintiff having produced some substantial evidence of a course of dealing whereby the defence relied upon " had been

waived or abandoned so that it was no part of the contract sued on" (*Salvail* v. *Foresters*, 70 N. H. 635), the motion for a nonsuit was properly denied.

A witness called by the defendant testified that the deceased had been told that the previous course of dealing would not be continued. From this it is argued that the rule of the cases before cited and that of *Dunn* v. *Insurance Co.*, 69 N. H. 224, cannot apply here. Whether, after a plaintiff has made a *prima facie* case, verbal testimony produced by the defendant may be of so conclusive a character that he would. be entitled to a verdict as matter of law may be a doubtful question. In *Pillsbury* v. *Pillsbury*, 20 N. H. 90, 97, it was said: "The evidence upon which the nonsuit was moved came from the party himself who moved it. A nonsuit is not granted in such cases, for the plaintiff is not obliged to yield to the evidence, and is entitled to have it weighed by the jury." But in *State* v. *Harrington*, 69 N. H. 496, it was held that a verdict should be directed for the plaintiff when "there was no evidence which would support a verdict in favor of the defendants."

Conceding for the purposes of the present case that the rule is that the producer of the verbal testimony of witnesses may insist upon its conclusiveness as matter of law, the result here will be the same. There was evidence tending to cast doubt upon the testimony of the collector. It appeared that after the alleged interview the insured sent premiums to the defendant's office, and the tender of payment was there received conditionally, but without any mention being made of the alleged termination of the contract. The jury might well find from this transaction that the collector's interview did not take place, or was not authorized by the defendant; otherwise the offer to pay would have been declined for the reason above indicated. In addition to this, it appeared that the witness was an employee of the party calling him. He was not wholly disinterested, and was testifying to a conversation with a person who was dead when the testimony was given. If there can be cases where the burden of proof is conclusively borne, as matter of law, by the production of verbal testimony, this is not one of that class. The witness was interested, he testified to what he knew could not be directly contradicted, and there were circumstances in evidence which tended to contradict his story. The plaintiff was "entitled to have it weighed by the jury," and the direction of a verdict was rightly refused.

The exception to the denial of the motion to set aside the verdict as against the law and the evidence presents no question of law.

*Exceptions overruled.*

All concurred.